CECILIA NUTTELMAN, TRUSTEE OF L & M ENTERPRISE TRUST, APPELLANT, V. DENNIS JULCH ET AL., APPELLEES.

424 N.W.2d 333

Filed June 10, 1988.    No. 86-542.

Cecilia Nuttelman, pro se.

Thomas H. Penke of Emery, Penke & Blazek, for appellees.

HASTINGS, C.J., CAPORALE, GRANT, and FAHRNBRUCH, JJ., and CHEUVRONT, D.J.

HASTINGS, C.J.

This is an appeal by Cecilia Nuttelman, Trustee of L & M Enterprise Trust, "(Sovereign Individual)," generally complaining of the judgment of the district court which dismissed her petition in ejectment brought against Dennis Julch and others. She assigns as error the holding of the district court that there remained justiciable issues of fact to be resolved upon defendants' counterclaims, the enjoining of the plaintiff from commencing further litigation against the defendants, the overruling of her motion for summary judgment, and the dismissal of her petition in ejectment.

Plaintiff alleged in her petition that she and her husband were bodily removed from the land in question, "Section 9, Township 12, Range 1," in York County, by county officials on July 10, 1985, by means of a writ of assistance issued on May 29, 1985. She further alleged that the defendants knowingly and willingly trespassed on the real estate; that the plaintiff, "along with other Trustees," has legal estate in the land described; that

she is entitled to possession of the real property because it is, by law, owned by L & M Enterprise Trust; and that defendants unlawfully keep her from possession.

The defendants, for their answer and counterclaim, allege that a judgment was obtained on May 17, 1982, against Roy Nuttelman (Cecilia's husband) by the Stromsburg Bank of York County, Nebraska (Bank), in the amount of $64,500; that a court decree was obtained by the Bank on October 7, 1983, declaring a conveyance of the land by Roy and Cecilia Nuttelman to be in fraud of the Bank; that the land had been subject to levy and execution in satisfaction of the Bank's judgment, which execution occurred on February 4, 1985; that the ownership right of Cecilia Nuttelman as trustee for various trusts had been considered and adjudicated null and void by the district court for York County; that on February 4, 1985, the property was sold at judicial sale to McClure Land Unlimited for $115,000, which sale was confirmed by the district court and from which no appeal was taken; and that on May 7, 1985, a sheriff's deed was delivered to McClure and recorded in the office of register of deeds of York County on May 7, 1985, and on the same day was conveyed by McClure to Dennis Julch.

The counterclaim continues with allegations that Roy Nuttelman filed a chapter 7 bankruptcy petition on May 9, 1985, in which he claimed no ownership in the land; that on June 24, 1985, the U.S. Bankruptcy Court sustained defendant's motion for individual relief from the automatic stay provisions of the Bankruptcy Code; and that on September 7, 1985, Roy and Cecilia Nuttelman filed a document entitled "Mechanic's Lien" in the office of register of deeds of York County, claiming a lien interest in the land, and on December 2, 1985, filed an action to foreclose that lien, which was summarily dismissed on January 23, 1985, by the court, as having no foundation in law or fact. The defendants allege further litigation of a frivolous and vexatious nature brought by Roy and Cecilia Nuttelman for which they seek relief by injunction and money damages.

The record in this case is a procedural morass. It contains affidavits and showings which for the most part are largely irrelevant. However, we shall set forth as best we can those facts

which seem to have anything to do with the issues in the case.

In 1969, Roy Nuttelman inherited the land from his father. On November 15, 1978, he and his wife, Cecilia, conveyed the land to L & M Enterprise Trust. On March 17, 1980, Roy renewed a promissory note to the Stromsburg Bank in the amount of $70,000 plus interest. Only $5,500 on the note was paid when it became due on May 17, 1980. The Bank obtained a judgment on the note on May 17, 1982.

Apparently, for the purpose of seeking property against which to levy execution on its judgment, the Bank discovered the conveyance to L & M Enterprise Trust. Accordingly, on February 9, 1983, the Bank brought an action alleging that the purported conveyance to L & M was fraudulent. An order declaring the conveyance to be fraudulent and setting it aside was entered by the district court on October 7, 1983, and affirmed by this court in *Stromsburg Bank v. Nuttelman*, 218 Neb. 687, 358 N.W.2d 746 (1984).

Once the judgment of invalidity had become final, the Bank caused an execution to be issued on its judgment, the sheriff levied on the above property, and on February 4, 1985, the property was sold at a judicial sale to McClure. The sale was confirmed, and no appeal was taken from the confirmation.

On May 7, 1985, the deed to the property was delivered to McClure, which in turn conveyed the property to defendant Dennis Julch on the same day. Two days later, on May 9, Roy Nuttelman filed a petition in bankruptcy. The defendant Julch obtained relief from the automatic stay from the bankruptcy court and on July 9, 1985, obtained a writ of assistance commanding the sheriff to assist him in being placed in possession of the property, i.e., to oust the Nuttelmans from the land.

Being removed from the property apparently prompted a flurry of litigious activity on the part of the Nuttelmans and against the defendants, culminating in the present suit in ejectment.

The final order of the district court, and the one from which this appeal is taken, held that there remain justiciable issues of fact to be resolved upon the defendants' counterclaim; that plaintiff's motion for summary judgment is overruled; that

plaintiff's petition in ejectment has no basis in law or fact, fails to state a cause of action, and is dismissed; and that the plaintiff has continued upon a course of frivolous and vexatious litigation against the defendants and is enjoined from commencing or initiating further litigation against these defendants.

We will deal first with two of the plaintiff's assignments of error, i.e., that the trial court erred in overruling plaintiff's motion for summary judgment and erred in holding that the plaintiff had no basis in law or fact to sustain her action in ejectment.

The plaintiff's *husband's* rights and interests in the land passed to the purchaser upon confirmation of the sale. When the sale was confirmed and the deed delivered, legal title to the land passed from plaintiff's husband to the purchaser and its grantee, Dennis Julch. See Neb. Rev. Stat. § 25-1533 (Reissue 1985).

The plaintiff's argument is grounded on the premise that, even though her husband's legal interests in the property may have passed upon purchase, she had legal rights to the land which were not affected by the sale. Unfortunately, there are no facts in the record which bear this out, in spite of plaintiff's legal arguments that she and her husband held title in joint tenancy because they purchased the land; that they worked the land; that they previously had signed a mortgage on the land; and that she has a lien for labor, services, materials, and investments on and in the land. The undisputed facts are that title to this land was obtained originally by Roy by means of a devise from his father. There is nothing of record to establish that any title was ever conveyed to the plaintiff. The will of Roy's father did provide for a "charge" of $18,750 against the property, but plaintiff did not provide any evidence that she had inherited any land from the estate or that she had made any contribution toward "purchasing" the land from the estate. In fact, the evidence which she introduced confirmed that it was solely her husband who derived title to the land through the testamentary conveyance.

Plaintiff's claim that she presently holds a lien against the property which gives her a legal interest in the land must also

fail. Even if her claim of a lien for labor, services, etc., was valid, it is not proof of ownership rights to the property. Evidence that one holds a lien is not evidence of ownership; a lien is not a property right in or to the thing itself, but constitutes a charge or security thereon. See *Mapledge Corp. v. Coker*, 167 Neb. 420, 93 N.W.2d 369 (1958).

It is claimed by the plaintiff that the defendant Julch never met his burden of proving that he had good title, and, therefore, the plaintiff's title is good against his. Contrary to the plaintiff's contention, the defendant had no burden to prove good legal title to the land; this burden was solely the plaintiff's. "This action is one for ejectment so there is no burden on the defendant to show title, but the plaintiffs must show title in themselves." *Kozak v. State*, 189 Neb. 525, 527, 203 N.W.2d 516, 518 (1973), *overruled on other grounds Lillich v. Lowery*, 211 Neb. 757, 320 N.W.2d 463 (1982).

Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from material facts, and when the moving party is entitled to judgment as a matter of law. The burden is on the moving party to show that no issues of material fact exist, and unless the party can conclusively do so, the motion must be overruled. *Janssen v. Trennepohl, ante* p. 6, 421 N.W.2d 4 (1988). On the basis of these rules, the judgment of the district court in overruling plaintiff's motion for summary judgment and sustaining defendants' motion as to the dismissal of the petition in ejectment was on a sound footing and is sustained.

The plaintiff makes one last argument to the effect that the judgment against Roy was insufficient to deprive her of her homestead rights. However, that argument is without merit, as the trial court, in confirming the sale of the land, found that the property was the homestead of the plaintiff's husband and set off $6,500 from the judgment. This setoff was in accordance with Neb. Rev. Stat. § 40-101 (Reissue 1984), which provides that a homestead allowance of $6,500 "shall be exempt from judgment liens, and from execution or forced sale . . . ."

Plaintiff complains of the trial court's determination that

there remain justiciable issues of fact to be resolved upon the defendants' counterclaims. These claims undoubtedly relate to the defendants' claim for damages due to vexatious litigation. The defendants argue that the counterclaim issue is moot, as the counterclaims were dismissed on July 8, 1986. However, plaintiff is correct in her contention that because she had already perfected her appeal to this court by July 8, jurisdiction had vested and the district court was without authority to issue an order dismissing the counterclaims. Any order made by the district court after the vesting of jurisdiction in the Supreme Court is void and of no effect. The district court lost jurisdiction the instant the appeal was perfected. *State v. Allen*, 195 Neb. 560, 239 N.W.2d 272 (1976).

The defendants' counterclaims relate to a claim of damages for vexatious litigation and libel, and, of course, also sought an injunction prohibiting plaintiff from filing further lawsuits. The argument portion of her brief addresses only the matter of the injunction. Therefore, under the rule that this court will not consider issues which are not both assigned *and* discussed, we will deal only with the matter of the injunction.

Neither party has directed any discussion of substance to the question of the availability of the injunction process to prohibit vexatious litigation, nor has either provided us with any legal authorities. Our own research discloses the following from 43A C.J.S. *Injunctions* § 47 at 26 (1978):

> It is generally held, whether the litigation complained of is numerous actions between the same parties or numerous actions brought by many against one, that equity may enjoin vexatious suits, not brought in good faith and instituted for annoyance or oppression or to cause unnecessary litigation, and such power exists independently of the power to prevent a multiplicity of actions.

Although not exactly on point, the holding and language of *Shevalier v. Stephenson*, 92 Neb. 675, 139 N.W. 233 (1912), is instructive on this point. This case involved a will contest in which the plaintiff, who was a substantial legatee under the will, was successful in having it admitted to probate. The case was appealed to the district court. During those proceedings, the

heirs claimed that the plaintiff had taken several thousands of dollars belonging to the estate, and several thousand dollars were found on her person. Thereupon, a settlement was made through the plaintiff's attorney. Plaintiff then brought an action in equity in the district court to obtain a new trial. In her petition she claimed that the settlement of the controversy which resulted in the judgment against her was obtained by duress and the fraud and misconduct of her lawyer conniving with those interested to defeat her. By cross-petition, one of the defendants alleged that in September of 1908, approximately 18 months before the present action was filed, the plaintiff had begun a similar action against these same parties, making similar allegations, and that when the issues were joined and the case was about to come to trial, plaintiff dismissed her action and immediately filed a second action making the same allegations. When that action was ready for trial, plaintiff again dismissed her petition and brought the present action. The prayer of the cross-petition was that plaintiff was bringing the litigation for the sole purpose of harassing and embarrassing the defendant and to cast a cloud on the title of the defendants. The trial court found in favor of the defendant and enjoined the plaintiff from bringing further litigation.

This court affirmed the judgment of the district court. In so doing, it stated:

> The principal contention between these parties was as to the probate of the proposed will. That issue had been determined in an action at law. If a party could bring successive actions for the same cause, and successively dismiss and again begin the action, the rights of the parties would never be determined in actions so brought and dismissed, and there would . . . never be a time when the court could stop such proceedings.

Id. at 680, 139 N.W. at 234-35.

That is essentially the case here. The ejectment action raises the issue of title to real estate. That was determined in the foreclosure action and the action to set aside a fraudulent conveyance. Plaintiff here is simply attempting to try the question of title again.

A party litigant who brings successive lawsuits involving the

same issues against the same parties, which are vexatious in nature, may be enjoined from continuing such action.

The court in *Shevalier* discussed the question of the breadth of the order of injunction and concluded that because it prevented litigation against the existing parties as to matters of the same nature, i.e., the adjustment and distribution of the estate, "we do not see that the decree has gone further than necessary for that purpose." *Id*. at 682, 139 N.W. at 235.

The decree in the present case may be somewhat broader than necessary in that it enjoins the plaintiff from "commencing or initiating any further suit or litigation, whether in law or equity," against the named defendants. We believe that the order granting the temporary injunction should be modified to limiting the restriction to litigation involving the title and peaceful possession and enjoyment of the described real estate.

With that modification, we find that the pleadings, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from the material facts relating to the vexatious nature of the present litigation, and the defendants are entitled to judgment on that portion of their counterclaims as a matter of law.

The judgment of the district court is affirmed as modified by this opinion.

AFFIRMED AS MODIFIED.