IN RE GUARDIANSHIP AND CONSERVATORSHIP OF
LESLIE E. BOWMAN, A FORMERLY PROTECTED AND
INCAPACITATED PERSON, DECEASED.
WILLIAM KRATVILLE, PERSONAL REPRESENTATIVE OF THE
ESTATE OF LESLIE E. BOWMAN, DECEASED, APPELLEE, V.
THERESE M. ROSSE, INDIVIDUALLY AND AS GUARDIAN
AND CONSERVATOR OF LESLIE E. BOWMAN, A FORMERLY
PROTECTED AND INCAPACITATED PERSON, APPELLANT.

686 N.W.2d 642

Filed September 28, 2004.   No. A-03-1207.

Jay L. Welch and Michelle D. Epstein, of Locher, Cellilli, Pavelka & Dostal, L.L.C., for appellant.

Michael B. Kratville for appellee.

IRWIN, Chief Judge, and SIEVERS and CARLSON, Judges.

IRWIN, Chief Judge.

## I. INTRODUCTION

Therese M. Rosse, individually and as guardian and conservator of Leslie E. Bowman, a formerly protected and incapacitated person now deceased, appeals from an order of the county court for Douglas County. In its order, the county court granted motions filed by William Kratville, intervenor and personal representative of Bowman's estate, in which motions Kratville sought a clarification of a prior order of the county court. Because we find that the county court was without authority to enter an order "clarifying" its prior order, the county court's order must be reversed and the case remanded with directions to dismiss.

## II. BACKGROUND

On September 18, 2001, Rosse filed a petition for her appointment as guardian and conservator for Bowman. On October 25, the county court appointed Rosse as guardian and conservator for Bowman.

On April 23, 2002, Bowman died. On May 8, Rosse filed a motion for approval of her final accounting, in which motion she requested payment of guardian and conservator fees and attorney fees. On May 21, the county court rendered an order approving the final accounting for the period of October 25, 2001, through May 6, 2002, and awarding Rosse guardian and conservator fees and attorney fees. On September 6, Rosse was discharged as guardian and conservator.

Kratville is the personal representative in separate county court estate proceedings for Bowman's estate. On July 17, 2003, Kratville filed two motions, seeking to intervene in the previously closed guardianship and conservatorship proceedings and to have the county court therein "clarify" whether the May 21, 2002, order approving the final accounting and payment of fees to Rosse was intended to compensate Rosse for services she performed on Bowman's behalf prior to being appointed guardian and conservator or to compensate her only for services she performed after being so appointed. Kratville specifically indicated that the county court judge presiding over the estate proceeding, Lyn V. White, had requested that Kratville seek a clarification

from the county court judge who had presided over the guardianship and conservatorship proceedings, Thomas G. McQuade.

On September 26, 2003, the county court entered an order granting Kratville's motions. The court specifically indicated that "[t]he court is of the understanding that it is always proper to correct errors where such errors exist *or to resolve any misunderstandings.*" (Emphasis supplied.) The court further indicated that at the time of the hearing on Rosse's May 8, 2002, motion for approval of her final accounting, the court received an exhibit which detailed Rosse's time spent on Bowman's behalf between March 1996 and April 21, 2002, which included a significant period of time prior to Rosse's appointment as guardian and conservator. Finally, the court specifically noted that when awarding Rosse fees in the May 21, 2002, order, the court took "the totality" of the exhibit into account in determining the amount of fees to award Rosse. This appeal followed.

### III. ASSIGNMENT OF ERROR

Rosse's sole assignment of error is that the county court was without authority to entertain Kratville's motions.

### IV. ANALYSIS

Rosse argues that the county court was without authority to entertain Kratville's motions to intervene and to "clarify" the court's prior order. We agree and specifically find that the county court was without authority to enter any order clarifying the language or intention of the May 21, 2002, order, from which no appeal was ever taken.

#### 1. JURISDICTION OF APPELLATE COURT

We first address the question of whether we have jurisdiction to hear this appeal. Kratville argues on appeal that we lack jurisdiction because the September 26, 2003, order entered by the county court was not a final, appealable order under Neb. Rev. Stat. § 25-1902 (Reissue 1995). Although we agree that we do not have jurisdiction to review the merits or substance of the county court's order, we specifically find that we do have jurisdiction to determine whether the county court had jurisdiction to enter the order, which is the primary question raised by Rosse's appeal.

In *Currie v. Chief School Bus Serv.*, 250 Neb. 872, 553 N.W.2d 469 (1996), the Nebraska Supreme Court addressed the question of whether it had jurisdiction to hear an appeal from an order entered by a lower court when the lower court was without authority to enter the order. In *Currie*, the lower court had entered an order at a time when a previous appealable order had been appealed and the lower court had been divested of jurisdiction over the case. The Supreme Court held that in that circumstance, although an extrajurisdictional act of a lower court cannot vest an appellate court with jurisdiction to review the merits of an appeal, the appellate court has jurisdiction and, moreover, the duty to determine whether the lower court had the power, that is, the subject matter jurisdiction, to enter the judgment or other final order sought to be reviewed. *Id.*

The present case is factually comparable to *Currie*. In the present case, the question raised on appeal is whether the lower court had jurisdiction to enter the order being appealed from. As noted above, although we do not have jurisdiction to address the merits of the order entered, we do have jurisdiction to determine whether the lower court had jurisdiction to enter the order in the first instance.

### 2. JURISDICTION OF LOWER COURT

Having concluded that we have jurisdiction to resolve the issue raised in Rosse's appeal, namely whether the county court had authority or jurisdiction to enter the order clarifying its previous order, we next consider whether the county court could properly enter an order clarifying its prior order. We conclude that established Nebraska law prohibits an order such as the one entered on September 26, 2003, by the county court in this case.

At the hearing on Kratville's motions, the county court specifically indicated:

> I certainly think the Court has the right to reopen its files at any time in order to correct any mistakes that were made or to clarify any orders that were issued. Certainly not to change any orders that were issued and I'm not intending to do that at all. I thought it was fairly clear with the order and the exhibit and what was happening.

We specifically disagree and disapprove of the county court's position that it can "certainly . . . reopen its files at any time . . . to clarify any orders that were issued." Although neither party cites this court to the applicable authority, there is longstanding precedent from the Nebraska Supreme Court indicating that trial courts are without authority to reopen their files and enter orders "interpreting" or "clarifying" prior orders after the time for a proper appeal has passed.

In *Neujahr v. Neujahr*, 223 Neb. 722, 728, 393 N.W.2d 47, 51 (1986), the Nebraska Supreme Court specifically noted that "neither what the parties thought the judge meant nor what the judge thought he or she meant, after time for appeal has passed, is of any relevance" and that "[w]hat the decree, as it became final, means as a matter of law as determined from the four corners of the decree is what is relevant." To allow a court to "reopen" its files and enter an order "clarifying" what was intended or meant by the language used in a prior order would run afoul of the sanctity of the principles underlying finality in litigation. See *Neujahr v. Neujahr, supra*. To allow the procedure utilized in the present case would allow the meaning of the county court's May 21, 2002, order to be altered by way of "clarifications" at the whim of anyone seeking to later "reopen" the case, and such alteration is specifically not authorized.

Kratville argues on appeal that Rosse's position that the county court lacked authority to entertain his motions is an "absurdity." Brief for appellee at 3. Kratville asks, "Why would [Kratville] lack the capacity to intervene for the limited purpose of asking Judge McQuade what he meant? If not [Kratville], then whom [sic]?" *Id.* The answers to Kratville's questions are that he lacks the capacity to intervene for the purpose of asking the county court what was meant because the county court's order had long since become final and because the county court is not allowed to later enter an order "interpreting" or "clarifying" what was meant and that nobody has the capacity to ask the county court to do so. In light of the Nebraska Supreme Court's teaching on this issue, Rosse's position is far from absurd and is, in fact, the only legally supportable position.

Additionally, we are not persuaded by Kratville's argument that Neb. Rev. Stat. § 25-2001(3) (Cum. Supp. 2002) provides

authority for the action taken by the county court in this case. Section 25-2001(3), which section is the result of legislative amendments enacted in 2000, provides authority for trial courts to use an order nunc pro tunc to correct "[c]lerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission." We find the order of the county court appealed in this case to be significantly different from an order nunc pro tunc to correct a clerical error, inasmuch as the effect of the order appealed in this case is to potentially effect a substantive change in the prior order, not to remedy a mere clerical error. We do not think the present situation is contemplated by the plain language of § 25-2001(3).

■ In this case, as in *Neujahr v. Neujahr, supra,* the judgment had long since become final prior to the motions to intervene and "clarify" the judgment. *Neujahr* leaves no doubt that the rule in Nebraska is that there is no procedure authorizing a court to "interpret" or "clarify" its prior final orders, and this court must thus find that the county court lacked subject matter jurisdiction to entertain Kratville's motions. Further, although we are mindful of Neb. Ct. R. of Prac. 2E(4) (rev. 2000), we note that this court has previously reached the same result on comparable facts, in a decision that was not designated for permanent publication. See *Kremer v. Kremer,* No. A-91-326, 1993 WL 80602 (Neb. App. Mar. 23, 1993) (not designated for permanent publication). Since the county court was without authority to clarify its prior order, the order of September 26, 2003, must be reversed and the case remanded with directions to dismiss. See *id.*

## V. CONCLUSION

The county court was without authority to clarify its prior order. The county court's order of September 26, 2003, must be reversed and the case remanded with directions to dismiss.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.